# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STEPHANIE SCHEEL, ET AL., *Plaintiffs,* v. STEVE W. HARRIS, ET AL., *Defendants.* | CASE NO. 3:11-cv-00018 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Harris's Motion to Dismiss or Transfer (docket no. 2), Defendant Harris's Rule 12(b)(6) Motion to Dismiss (docket no. 5), Defendant Brooks's Motion to Dismiss or Transfer (docket no. 7), and Defendant Brooks's Rule 12(b)(6) Motion to Dismiss (docket no. 9). The motions were fully briefed and a hearing was held on June 22, 2011. Upon consideration of the parties' arguments, I will grant Harris's Motion to Dismiss or Transfer (docket no. 2) and Brooks's Motion to Dismiss or Transfer (docket no. 7). Harris's Rule 12(b)(6) Motion to Dismiss (docket no. 5) and Brooks's Rule 12(b)(6) Motion to Dismiss (docket no. 9) will be denied as moot.

## I. BACKGROUND

Plaintiffs Stephanie Scheel and MRW Holdings, Inc. ("MRW") (collectively, "Plaintiffs") brought this action for defamation and common law conspiracy against Steve W. Harris and Gregg Brooks (collectively, "Defendants") in the Circuit Court for the County of Albemarle, Virginia, seeking damages, attorney's fees, and costs. Defendants removed the action to this Court on the basis of diversity of citizenship. Scheel is a resident of Virginia, and Harris and Brooks are residents of Kentucky. MRW is a North Carolina corporation of which

- 1 -

Margaret Ward is the president and sole shareholder. (Compl. ¶9.) MRW, Harris, and Brooks were members of Worldwide Benefit Services, L.L.C., a North Carolina limited liability company. (*Id.* ¶ 10.) The American Institute of Professional Association Group Insurance Administrators ("AIPAGIA") "is a professional association of group administrators dedicated to promoting and policing the business interests of group insurance administrators." (*Id.* ¶ 11.) MRW and Harris are members of AIPAGIA, and Scheel "is the voting representative of MRW within AIPAGIA." (*Id.* ¶ 12.)

On or about March 29, 2010, Harris allegedly sent an "Ethics Complaint" to Woody Long, who was the Chair of the Ethics Committee of AIPAGIA. (*Id.* ¶ 13.) As alleged, the Ethics Complaint consisted of "a package containing statements made by Harris and Brooks, and letters and emails concerning both MRW and Scheel." (*Id.*) Harris and Brooks allegedly worked together to prepare the Ethics Complaint. (*Id.* ¶ 18.) Harris and Brooks allegedly knew that the Ethics Complaint "would be simultaneously transmitted and re-published to the other members of AIPAGIA's National Council" and to Scheel and Ms. Ward. (*Id.* ¶¶ 14, 16.) The Ethics Complaint "was transmitted and re-published in several states to the members of AIPAGIA's National Council" and to Scheel and Ms. Ward. (*Id.* ¶ 15, 17.) Plaintiffs allege that the Ethics Complaint contained false statements about Scheel and MRW that were defamatory and impugned their business reputations. (*Id.* ¶¶ 19-21.)

Plaintiffs also allege that Harris and Brooks sent several defamatory emails. Harris allegedly made a defamatory statement "about Plaintiff" in a November 23, 2009 email sent to Brooks and Long. (*Id.* ¶ 22.) Harris allegedly made a defamatory statement about Plaintiffs in a January 8, 2010 email sent to Brooks and Scheel. (*Id.* ¶ 23.) Brooks allegedly made a

defamatory statement in a November 23, 2009 email sent to Harris, in a January 12, 2010 email sent to Harris, and in a March 22, 2010 email sent to Harris. (*Id.* ¶ 41.)

Counts I and II are defamation claims against Harris and Brooks, respectively. Count III is a claim against both Harris and Brooks for statutory conspiracy under the Virginia Civil Conspiracy Act, Va. Code Ann. § 18.2-499, *et seq.*, and for common law conspiracy. It alleges that Harris and Brooks intentionally acted in concert to willfully and maliciously injure the business reputations of Scheel and MRW. Subsequent to filing this suit, Plaintiffs filed a nearly identical action in the United States District Court for the Eastern District of Kentucky. *See Scheel v. Harris*, No. 3:11-cv-17 (E.D. Ky.). In the instant motions, Defendants object to personal jurisdiction over them in Virginia, service of process upon them in Kentucky, and venue in Virginia.[1]

## II. APPLICABLE LAW

### A. Federal Rule of Civil Procedure 12(b)(2)

To exercise personal jurisdiction over a nonresident defendant, the plaintiff bears the burden of making a prima facie showing that jurisdiction is authorized by the language of the state's long arm statute and that the exercise of personal jurisdiction would be consistent with due process under the U.S. Constitution. *See Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004); *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). "Virginia's long arm statute extends personal jurisdiction to the limits allowed by due process." *Mitrano*, 377 F.3d at 406. In pertinent part, Virginia's long arm statute provides as follows:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> . . .

---

[1] The service of process objection is subsumed under the question of personal jurisdiction.

> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> . . .
>
> B. Using a computer or computer network located in the Commonwealth shall constitute an act in the Commonwealth. For purposes of this subsection, "use" and "computer network" shall have the same meanings as those contained in § 18.2-152.2.

Va. Code Ann. § 8.01-328.1.

The Due Process Clause requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two forms of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-15 (1984). Where a defendant's contacts with the forum state provide the basis for the suit, those contacts may establish specific personal jurisdiction. *Mitrano*, 377 F.3d at 407. "The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfie[s] due process." *English & Smith*, 901 F.2d at 39. But a defendant's contacts "must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[W]hen the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident," a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 (4th Cir. 2003) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). The United States Court of Appeals for the Fourth Circuit has synthesized the due process

requirements for asserting specific personal jurisdiction in a three part test in which the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

In support of Defendants' motions to dismiss for lack of personal jurisdiction and improper venue, Defendants attached as exhibits to their motions affidavits as well as court documents and the docket sheet from the Eastern District of Kentucky proceeding. To support Plaintiffs' opposition to the motions to dismiss for lack of personal jurisdiction and improper venue, Plaintiffs attached an affidavit and copies of several emails. The court may consider materials submitted outside the pleadings without converting the motion to one for summary judgment as long as the materials are not submitted to support a motion to dismiss pursuant to Rule 12(b)(6) or a motion for judgment on the pleadings pursuant to Rule 12(c). Fed. R. Civ. P. 12(d). Furthermore, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396 (4th Cir. 2006) (unpublished); *see also Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents were neither referenced by nor integral to plaintiff's complaint).

### B. Federal Rule of Civil Procedure 12(b)(3)

Venue lies in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). When venue is challenged, the plaintiff has the burden to prove that venue is proper in the chosen forum for each defendant. *See United Coal Co. v. Land Use Corp.*, 575 F. Supp. 1148, 1158 (W.D. Va. 1983). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Even where venue is proper, "a district court may transfer any civil action to any other district or division where it might have been brought" if such transfer is for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a).

### C. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.

### III. DISCUSSION

To exercise personal jurisdiction over Harris and Brooks, Virginia's long arm statute must reach them, and the constitutional minimum contacts requirement must be satisfied. To establish personal jurisdiction, Plaintiffs rest on the transmission of some of the allegedly defamatory emails through AOL servers located within Virginia to Scheel's AOL email address. According to Scheel's affidavit, Scheel maintains the AOL email address of "wardscheel@aol.com," and it was through this email address that she received "some" of the allegedly defamatory emails. (Scheel Aff. ¶ 2, May 11, 2011.) Scheel states that it is "[m]y understanding, based on my billing statements and other information, [] that the AOL servers through which my AOL email account ran are located in Virginia." (Scheel Aff. ¶ 3.) Plaintiffs argue that the passage of the emails sent by Defendants to Scheel's AOL email address through AOL servers located in Virginia constituted use of "a computer or computer network located in the Commonwealth" for the purposes of § 8.01-328.1(B). The term "use" under § 8.01-328.1(B) has the same meaning as under the Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.1 *et seq*. That statute provides that a person uses a computer or computer network "when he attempts to cause or causes a computer or computer network to perform or to stop performing

computer operations." Va. Code Ann. § 18.2-152.2. A "computer network" means "two or more computers connected by a network." *Id.* The transmission of an email from one computer to another computer through AOL servers located in Virginia is considered "use" of a computer or computer network. *See Jaynes v. Commonwealth*, 276 Va. 443, 451-53, 666 S.E.2d 303, 307-08 (2008). Pursuant to § 8.01-328.1(B), if Defendants used a computer or computer network in Virginia, then that use constituted an act in Virginia. Plaintiffs maintain that the act of emailing the allegedly defamatory statements to Scheel caused tortious injury for the purposes of § 8.01-328.1(A)(3).

Even if I assume, for the sake of argument, that the emails were routed through servers located in Virginia, and the transmission of the emails is considered use of a computer network, Plaintiffs still cannot show that this act caused *tortious* injury. Under either Virginia or Kentucky law, defamation requires publication of a defamatory statement to a third party. *Food Lion, Inc. v. Melton*, 250 Va. 144, 150, 458 S.E.2d 580, 584 (1995) (citing *Montgomery Ward & Co. v. Nance*, 165 Va. 363, 378, 182 S.E. 264, 269 (1935) and *Snyder v. Fatherly*, 158 Va. 335, 350, 163 S.E. 358, 364 (1932)); *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793-94 (Ky. 2004). A third party is someone other than the party defamed. *Stringer*, 151 S.W.3d at 794. Without satisfaction of the publication element, the tort is not actionable. Thus, the statements contained in the emails sent by Defendants to Scheel are not actionable as defamation without communication of the statements to a third party. The delivery route taken by the emails directed to the email recipients other than Scheel is the route that supposedly caused *tortious* injury. If there were third-party recipients of the emails, they were not located in Virginia, and there is no claim that the emails directed to third-party recipients involved use of a computer or computer network in Virginia. Identical copies of the allegedly defamatory statements were sent

by Defendants to multiple parties via email; the fact that the copy sent to Scheel—the defamed party—was processed through AOL servers located in Virginia and received at a Virginia-based email account is not material to the tortious act.

In *Bochan v. La Fontaine*, the court was tasked with deciding whether defendants residing in Texas who posted purportedly defamatory statements via the Virginia-based AOL service to an online bulletin board committed an act in Virginia causing tortious injury sufficient to enable the court to exercise personal jurisdiction in Virginia. 68 F. Supp. 2d 692, 698-99 (E.D. Va. 1999). After reviewing pertinent case law, the court summarized that the focus of the jurisdictional inquiry should be placed "on the location of the Internet service provider or the server on which the bulletin board is stored and *the role played by this service or hardware in facilitating the alleged tort*." *Id.* at 699 (emphasis added). The court concluded that the plaintiff had made a prima facie showing of personal jurisdiction under § 8.01-328.1(A)(3) because *publication* of the allegedly defamatory statements occurred in Virginia, and *publication* is a required element of defamation, and use of an AOL server located in Virginia was integral to that *publication*. *Id.* Applying the guidance set forth in *Bochan* to the present matter, the AOL servers played no role in facilitating the publication of the allegedly defamatory statements because they only aided the defamed party in receiving the statements. The AOL servers were not integral to the tort otherwise.

Nor is the *ALS Scan, Inc. v. Digital Service Consultants, Inc.* model for determining personal jurisdiction based on Internet activity satisfied. 293 F.3d 707 (4th Cir. 2002). In *ALS Scan*, it was found that a state may, consistent with due process, exercise judicial power over a person outside of the state "when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that

activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. The electronic activity directed into Virginia is the emails sent to Scheel, but that activity did not create a potential cause of action in Scheel. If a cause of action for defamation and statutory and common law conspiracy exists, it was the emails containing statements about Scheel and MRW that were sent to third parties that created it. For these reasons, no basis exists under the long arm statute to exercise personal jurisdiction over Defendants in Virginia, and the requirement of constitutional due process is not met. The action must be dismissed.

The chosen venue is also improper. The only question is whether a substantial part of the events giving rise to the claims occurred in Virginia. As with personal jurisdiction, the only connection with Virginia claimed by Plaintiffs is the use of the Virginia-based AOL servers to deliver the supposedly defamatory statements to Scheel. Having found that the particular emails sent to Scheel did not give rise to the claims, Plaintiffs cannot meet their burden to show venue is proper. *See United Coal*, 575 F. Supp. at 1158. Plaintiffs have not directed me to any other events giving rise to the claims that occurred in Virginia. Both Harris and Brooks are citizens and residents of Kentucky. Long, to whom the Ethics Complaint was transmitted, was located in Kentucky. The other members of AIPAGIA's National Council, to whom the Ethics Complaint allegedly was republished, were located in states other than Virginia. The action will be dismissed for improper venue as well.

### IV. CONCLUSION

For the reasons stated herein, I will grant Harris's Motion to Dismiss or Transfer (docket no. 2) and Brooks's Motion to Dismiss or Transfer (docket no. 7). I will deny as moot Harris's

Rule 12(b)(6) Motion to Dismiss (docket no. 5) and Brooks's Rule 12(b)(6) Motion to Dismiss (docket no. 9). An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this __28th__ day of June, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE